IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN JESSE MARTINEZ, | No. C 11-01011 SI |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| JAMES A YATES, | |
| Respondent. | |

## INTRODUCTION

This matter is now before the Court for consideration of the merits of Ruben Jesse Martinez's petition for writ of habeas corpus. Petitioner bases his claims on the trial court's denial of his request to obtain jurors' contact information and on the alleged insufficiency of the evidence used to convict him. For the reasons stated below, the petition is DENIED.

## BACKGROUND

**I.   Procedural background**

In 2007, a jury in Santa Clara County found petitioner Martinez guilty of seven counts of forcible lewd conduct on a child, Cal. Penal Code § 288(b)(1); two counts of non-forcible lewd conduct on a child, *id.* at § 288(a); and one count of continuous sexual abuse of a child, *id.* at § 288.5(a). The jury acquitted petitioner of one count of forcible lewd conduct on a child, *id.* at § 288(b)(1), and of one count of rape, *id.* at § 261. Petitioner was sentenced to fifty-four years in prison.

Petitioner appealed the judgment to the California Court of Appeal, Sixth Appellate District,

which affirmed it. Petitioner sought review in the California Supreme Court, raising the claim of denial of access to juror information and a due process claim based on insufficiency of evidence. On December 2, 2009, the California Supreme Court denied his petition.

On November 12, 2010, petitioner filed a petition for writ of habeas corpus in the Eastern District of California, and the petition was transferred to this Court. The original petition raised three claims: (1) that petitioner was denied the right to receive a trial by an impartial jury; (2) that the trial court erred in denying petitioner access to jurors' contact information; and (3) that petitioner was denied due process because the evidence presented was insufficient to allow a rational trier of fact to find petitioner guilty beyond a reasonable doubt. On September 26, 2011, this Court granted respondent's motion to dismiss petitioner's impartial-jury claim for failure to exhaust state remedies and allowed petitioner to amend his petition to pursue his two exhausted claims. He did so, and respondent concedes that the remaining claims are both exhausted and timely.

## II.   Factual background

Petitioner's conviction stems from events occurring between 1988 and 1994, when petitioner was living with and, later, married to the mother of victims C. and R.

The California Court of Appeal described the facts as follows:

C. and R. first met defendant in 1987. Defendant was the boyfriend of their mother, L. Defendant did not live with them, but, one to three times a week, defendant would spend the night at the home that C. and R. shared with L. and their younger brother. C. and R. shared a bedroom. Defendant was a big man who weighed about 225 pounds. C. weighed less than 100 pounds. Although defendant never disciplined either of the girls or told them what to do, he was "a very big bully."

In 1988, when C. was 10 or 11 years old, she and defendant were "wrestling," and he grabbed her vaginal area with his hand over her clothes. It was a "[q]uick grab." C. originally thought it might have been an "accident," but a month or so later the same thing happened again. Defendant grabbed her in this manner a total of at least three times over a period of about a year.

After the first wrestling/grabbing incident, but before the second wrestling/grabbing incident, when C. was 11 years old, she was awakened late at night by the sound of the front door of the house opening. C. fell back to sleep for a couple of hours, and was awakened again by the sound of movement in her bedroom. Defendant was in C.'s bedroom. C. was "scared" and "didn't want to make a commotion." She was sleeping on her side, facing the wall. Defendant pulled C.'s underwear down, pulled her body closer to the edge of the bed, and put his penis between her thighs near her bottom. He left his penis there for a couple of seconds, and then he removed it, pulled her underwear back

2

up, and left the room. C. continued to lie there with her eyes closed.

Defendant repeated this conduct (placing his penis between C.'s thighs) on at least 10 occasions over a period of one year. Some of these events occurred after October 1989. All of these incidents occurred prior to April 1990, while C. was under the age of 13. But it was on only three or four occasions that defendant pulled C.'s body closer to the edge of the bed. On October 17, 1989, when C. was 12, she and defendant were sitting on the couch, and defendant grabbed and held her vaginal area for a few seconds.

On one occasion in 1990, when R. was 10 years old, R. was lying on the floor watching television. After lying down next to her, defendant put his hand underneath her shorts and underwear and touched her vagina. R. "didn't know what to do." She got up and went to the bathroom. When she returned from the bathroom, she resumed her position on the floor next to defendant. He repeated the conduct and massaged her vagina. R. found this "really embarrassing" and hoped no one would learn of it.

C. left L.'s home in 1991 when she was 13 years old and went to live with her father. Shortly after C. left, defendant married L. After C. left the home, defendant began molesting R. regularly. Defendant would come into R.'s bedroom at night or in the early morning and lie down next to her in her bed. R. was usually awakened by the sound of the closed door to her room opening, but she would pretend to be asleep. Defendant, who was wearing underwear, would press his erect penis against her back or her front and put his hand under her clothing to touch her vagina. Defendant would use his hands to position R.'s body so that he could rub his penis against her. This happened 30 to 50 times.

As R. got older, defendant began pulling up her shirt, touching her breasts and putting his mouth on her breasts. This occurred "a handful of times." When R. was 11 or 12, defendant began removing her underwear and shorts when he touched her. When he did not remove her clothing, he would remove his underwear and press his bare penis against her. Defendant always put her clothing back on her before he left the room. Defendant also would sometimes put her hand on his penis. Sometimes she would remove her hand, and he would put her hand back on his penis. R. would massage his penis when he did this. This hand/penis contact occurred about 100 times.

On numerous occasions when R. was under the age of 14, defendant would put R.'s legs on his shoulders and engage in "mock humping or dry humping." His penis would touch her vagina but either her underwear or his underwear would be in between. R. always pretended to be asleep. This occurred about 40 times.

On one occasion when R. was 12 or 13 or possibly 14, defendant got into bed with R. and took off her shorts and underwear. He began poking his penis in the area of her vagina. Defendant said: "'Do you want to feel it?'" "And then [he] began having -- having sex with" her. Defendant put his penis inside her vagina and moved it around. This hurt, and R. found blood when she went to the bathroom later. The day after this event, defendant came into R.'s room and said: "We got a little carried away last night. Let's not let it happen again."

Defendant continued to molest R., but he did not have intercourse with her again. At one point, R. wrote defendant a letter asking him to stop molesting her, and he stopped for a month but then resumed. At the time that defendant was molesting R., defendant weighed about 200 pounds, and R. weighed about 130 pounds. R. never did or said anything while defendant was molesting her. She was scared, disgusted, and impatient for him to leave her alone. Defendant molested R. until she and her mother and brother stopped living with him in 1994 when she was 15 years old.

3

> C. told no one about the molestations until she told a friend in high school. C. testified that she did not tell R. about defendant's conduct until both C. and R. were adults. C. had never thought about whether defendant might have been molesting R. also, and she had never seen defendant molest R. R., on the other hand, testified that, during the time period of the molestations, she "confirmed" to C. that "something [was] happening" to her. C. did not tell her mother about defendant's conduct because she did not want to upset her mother. R. did not tell her mother because she was afraid that she would be separated from her mother. R. did not tell her father because she thought "it's going to kill him."
>
> Defendant and L. divorced in 2000 or 2001. In March 2006, R. disclosed the molestations to her employer, who had known her for many years. Her employer encouraged her to tell the police, and she promptly did so. R. made two recorded telephone calls to defendant. Defendant's responses to R.'s accusations during these telephone calls were highly suggestive of his consciousness of guilt. R. subsequently told L. about the molestations, though she never told her father. C. never told L. about the molestations. After R. told L. about the molestations, L. also made a recorded telephone call to defendant. Defendant's responses to L.'s accusations during this call were also highly suggestive of his consciousness of guilt. R. filed a civil action against defendant in December 2006, which was pending at the time of the criminal trial.

*People v. Martinez*, No. H032557, 2009 Cal. App. Unpub. LEXIS 7316 at *1-7 (Cal. Ct. App. Sept. 10, 2009).

## LEGAL STANDARD

This Court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

4

state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

Even if this Court finds the state court's adjudication of petitioner's claim to satisfy 28 U.S.C. § 2254(d), the petition still may not be granted unless the state court's error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

**DISCUSSION**

**I.    Denial of access to the jurors' contact information**

**A.    Factual background**

During deliberations, the jury submitted a request to the judge stating, "[o]ne jurer [sic] has an alternate theory based on circumstantial evidence presented during the trial. We would like instructions on how to proceed." Resp.'s Ex. A, Clerk's Transcript (hereinafter "CT") at 254. After consulting with parties' counsel, the judge convened the jury and reread nine instructions. Resp.'s Ex. B, Reporter's Transcript (hereinafter "RT") at 890-96. After the return of the jury's verdict, petitioner filed a motion requesting that the court provide access to the jurors' contact information for the purpose of investigating potential juror misconduct. Petitioner alleged that the "'alternate theory' a particular juror advanced during deliberation may have been the product of his/her consultation with outside sources, namely publications and medical journals." CT at 334. Petitioner further asserted that the jury's acquittal for one count of lewd conduct with a child was inconsistent with the remainder of the verdict.

In the State's response to the request, the prosecutor argued that petitioner's theory of juror misconduct was speculative and that petitioner had failed to show good cause for access to the jurors' contact information. At the hearing on the motion, the trial court noted that six of the jurors had

5

1  communicated that they did not want their contact information released. The court held that "an inconsistent verdict does not rise to the level of good cause to require disclosure of sealed juror information," and denied the motion. RT at 971.

### B. California Court of Appeal decision

The California Court of Appeal rejected petitioner's claim that the trial court abused its discretion under California Code of Civil Procedure § 237, by refusing to release the jurors' contact information for the purpose of investigating potential juror misconduct. Noting that petitioner's motion was supported solely by the declaration of his attorney recounting the jury's inquiry concerning an alternative theory and petitioner's attorney's unsubstantiated belief that misconduct may have occurred, the Court of Appeal found that "[t]he mere 'potential' for juror misconduct is not enough to support a reasonable belief that misconduct actually occurred." *Martinez*, 2009 Cal. App. Unpub. LEXIS 7316 at *20. It held that the trial court did not abuse its discretion by denying the motion.

### C. Analysis

Petitioner contends that the trial court's denial of his petition for access to the jurors' contact information was contrary to, or an unreasonable application of, clearly established federal law. Petitioner cites *Remmer v. United States*, 364 U.S. 227 (1954), for the proposition that the remedy for allegations of juror misconduct is an evidentiary hearing. Respondent argues that this claim is not cognizable on federal habeas review because denial of access to jurors' contact information under California Code of Civil Procedure § 237 is a state-law issue. Alternately, respondent argues that, to the extent the claim raises a cognizable federal issue, the lack of clearly established federal law requiring access to the jurors' contact information precludes petitioner from relief.

While the Court of Appeal dismissed the claim on state-law grounds, petitioner asserts that he has also "simultaneously raised a federal constitutional question regarding his right to receive a fair trial in front of an impartial jury." Petitioner's Points and Authorities in Support of Traverse, 2. Petitioner further asserts that the trial court's denial of access to jurors' contact information impinged upon his right to a fair trial.

6

Federal habeas relief is only available on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994). A state court's procedural or evidentiary ruling may be subject to federal habeas review, however, if it violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985).

Here, petitioner's claim regarding the denial of access to the jurors' contact information fails whether grounded in state law, the Sixth Amendment, or due process guaranteed by the Fourteenth Amendment. The state-law claim is not cognizable on federal habeas review because it fails to raise a violation of the Constitution or laws or treaties of the United States. The Sixth Amendment impartial jury claim fails because this Court, in its September 26, 2011 Order, dismissed that claim for failure to exhaust in state court.

Remaining is petitioner's claim that the trial court's denial of access to the jurors' contact information violated his Fourteenth Amendment due process right to a fair trial. This claim fails because the decision of the Court of Appeal was not contrary to, or an unreasonable application of, clearly established federal law.

As the Ninth Circuit has explained, the Supreme Court has not ruled that any time allegations of juror misconduct are raised, "due process requires the trial court to question the jurors." *Tracy v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003) (citing *Remmer v. United States*, 347 U.S. 227 (1954), and *Smith v. Phillips*, 455 U.S. 209, 217-18 (1982)) (declining to find error where trial court, during questioning of one juror about potential misconduct, declined to inquire about the names of, or to investigate, other jurors who were also potentially subject to misconduct). Rather, the Supreme Court has stated that a hearing "may" be the proper course, and that one "is sufficient" to satisfy due process. *Id.* at 1045 (citing *Phillips*, 455 U.S. at 217-18). *Remmer* and subsequent proceedings in *Phillips* leave

open the door as to whether a hearing is always required and what else may be "sufficient" to alleviate due process concerns, *id.*, but do not prescribe access to jurors' contact information to investigate all allegations of juror misconduct, especially those based on conjecture or speculation like the allegations raised in this case.

Because there is no clearly established federal right to jurors' contact information based on mere allegations of juror misconduct, the Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[1]

## II.     Insufficient evidence

### A.     Factual background

Counts Three through Eight of the Information alleged that petitioner committed six separate acts of forcible lewd conduct on R. within the time frame of January 1, 1991 and October 10, 1993. Of these charges, petitioner was convicted of Count Three and Counts Five through Eight, and acquitted of Count Four. Counts Nine and Ten of the Information alleged that petitioner committed two separate acts of forcible lewd conduct on C. within the time frame of January 1, 1988 and May 22, 1989, and Counts Eleven and Twelve alleged that petitioner committed two separate acts of non-forcible lewd conduct on C. within the time frame of January 1, 1988 and May 22, 1990. Petitioner was convicted on all of those Counts.

### B.     California Court of Appeal Decision

On direct appeal, petitioner argued that the failure of the prosecutor to specify what conduct corresponded to each Count and the nature of the testimony of the victims, also lacking in specificity as to the dates and conduct corresponding to each Count, rendered the evidence insufficient to sustain a verdict of guilt and violated petitioner's due process rights. Further, petitioner urged that the Counts

---

[1] There is some question as to whether petitioner raised and exhausted this due process claim in state court. However, even if petitioner has failed to exhaust state remedies as to this claim, this Court may deny it without reaching the exhaustion issue if the petition fails to raise even a colorable federal claim. *See* 28 U.S.C. § 2254(b)(2); *Cassett*, 406 F.3d at 623-25; *Granberry*, 481 U.S. at 135 & n.7. Because there is no federal right to jurors' contact information, the claim that denied access to such information infringes upon petitioner's due process rights is not colorable.

8

were multiplicitous in that they charged multiple counts for the same criminal conduct, in violation of the Double Jeopardy Clause of the Fifth Amendment. Finally, petitioner asserted that the acquittal on one count of lewd conduct on R., Count Four, renders the guilty verdicts for Count Three and Counts Five through Nine inconsistent, presumably in violation of his due process rights.

The Court of Appeal rejected petitioner's claims. It reasoned that the testimony of R. and C. "provided a substantial basis for the jury's verdicts on the lewd conduct counts." *Martinez*, 2009 Cal. App. Unpub. LEXIS 7316 at *13. The court relied on *People v. Jones*, in which the California Supreme Court held that "the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction." 51 Cal. 3d 294, 315 (1990) (citation omitted). Rather, a victim must describe "*the kind of act or acts committed* with sufficient specificity, . . . . the *number of acts* committed with sufficient certainty, . . . . [and] *the general time period* in which these acts occurred." *Id.* at 316. Here, the Court of Appeal found that "[t]he trial testimony of C. and R. identified the types of acts, the number of acts, and the general time periods during which these acts occurred. Defendant does not claim otherwise. Consequently, their testimony was sufficient to support the jury's verdicts." *Martinez*, 2009 Cal. App. Unpub. LEXIS 7316 at *14. The Court of Appeal also found that the claim of multiplicity was without merit, reasoning that "none of the charged counts were 'based on the same criminal behavior.'" *Id.* at *12 (citing *United States v. Jenkins*, 313 F.3d 549, 557 (10th Cir 2002)). Finally, reasoning that "[t]he jury could have reasonably concluded that one of these kinds of acts did not involve the requisite force and, on that basis, acquitted on one of the counts," the Court of Appeal found that the inconsistency did not undermine the jury's verdicts. *Id.* at *6.

**C.     Analysis**

Petitioner contends that the Court of Appeal's rejection of his claim of insufficiency of evidence is an unreasonable application of, and contrary to, *Jackson v. Virginia*, 443 U.S. 307 (1979). Petitioner bases his claim on the generic nature of the victims' testimony, the inconsistency of the verdicts, and the multiplicity of the charged counts. Respondent argues not only that substantial evidence supported the jury's verdicts, but also that petitioner fails to meet his burden of establishing that the Court of Appeal's decision was objectively unreasonable in light of the factual evidence presented.

9

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 U.S. 843 (1993). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt has there been a due process violation. *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338; *Miller v. Stagner*, 757 F.2d 988, 992-93 (9th Cir.), *amended*, 768 F.2d 1090 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048, *and cert. denied*, 475 U.S. 1049 (1986); *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984).

Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Juan H. v. Allen,* 408 F.3d 1262, 1275 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)). Thus, if the state court affirms a conviction under *Jackson*, the federal court must apply § 2254(d)(1) and decide whether the state court's application of *Jackson* was objectively unreasonable. *See McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (finding the Ninth Circuit erred by failing to consider all of the evidence in light most favorable to the prosecution when it resolved inconsistencies in testimony in favor of petitioner); *Sarausad v. Porter*, 479 F.3d 671, 677-78 (2007). To grant relief, therefore, a federal habeas court must conclude that "the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 965 (9th Cir. 2011).

Here, petitioner's claims fail because the Court of Appeal's application of *Jackson* was not objectively unreasonable.

The Court of Appeal rejected the claim that the generic nature of the evidence rendered it insufficient by quoting *People v. Jones*, in which the California Supreme Court held that the failure to distinguish the "precise date, time, place or circumstance" for the conduct underlying each charge does not render the evidence insufficient to support convictions for each charge. 51 Cal. 3d at 315. Instead, the victim must only identify the kind of, number of, and general time period in which the conduct

10

1 occurred. *Id.* at 316.

2 Both victims testified that petitioner repeatedly molested them over specific periods of time. R. testified that petitioner touched her vagina while she was lying down and watching TV at age ten (RT at 234); that petitioner laid next to her in bed at night and touched her vagina underneath her clothing at age 10 (RT at 241-42); that petitioner pressed his penis against her or touched her vagina on the morning of softball practice in the fifth grade (RT at 257); that petitioner pulled down her shorts and underwear and massaged her vagina when she was in the sixth grade (RT at 252-54); that petitioner placed his mouth on her breasts "[n]ot more than ten" times when she was in the seventh or eighth grade (RT at 252); that petitioner placed her legs on his shoulders and simulated sex approximately forty times between and including her sixth through eighth grade years (RT at 265); that petitioner placed her hand on his penis and forced her to masturbate him "probably" one hundred times between her fifth and eighth grade years (RT at 258-62); and that petitioner tried to grab her vagina when she visited him in her tenth grade year (RT at 270). C. testified that petitioner grabbed her vagina over her clothes three or four times while she and petitioner were wrestling when she was ten or eleven years old (RT at 115-16); that petitioner pulled down her underwear and placed his penis between the upper part of her thighs at night ten times when she was eleven and twelve years old (RT at 124, 130); and that petitioner grabbed her vagina over her clothes on the night of the Loma Prieta earthquake, October 18, 1989, when she was twelve years old (RT at 134-36).

The above testimony identifies the kind of, number of, and general time period of the conduct, as required by *People v. Jones*. A rational trier of fact crediting the testimony could have reasonably determined that the required elements of Count Three and Counts Five through Twelve were proven beyond a reasonable doubt. Therefore, the Court of Appeal's holding that the evidence was sufficient to support the verdicts satisfies the *Jackson* standard.

The Court of Appeal's determination that the charged counts were not duplicative or multiplicitous also was not objectively unreasonable under *Jackson*. The test established in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("same elements" test: "whether each provision requires proof of a fact which the other does not"), ordinarily determines whether crimes are indeed separate and whether cumulative punishments may be imposed. *See Rutledge v. United States*, 517 U.S. 292, 297

(1996); *Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984).  The Double Jeopardy Clause is not violated if "each [offense] requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304; *see also United States v. Garlick*, 240 F.3d 789, 793-94 (9th Cir. 2001) (two counts of wire fraud based on two fax transmissions not multiplicitous, even though only first fax was sent by defendant and first fax could have been used to prove defendant caused second fax to be sent).

As the Court of Appeal explained,

> [t]he information alleged that defendant had committed six *separate acts* of forcible lewd conduct on R. during a nearly three-year period, two *separate acts* of forcible lewd conduct on C. during a period of more than a year, and two *separate acts* of non-forcible lewd conduct on C. during a more than two-year period.

*Martinez*, 2009 Cal. App. Unpub. LEXIS 7316 at *12.  Because each Count was premised on, and supported by testimony of, separate acts of lewd conduct on a child, the Court of Appeal's rejection of the claim was reasonable under *Jackson*.

Finally, the Court of Appeal's determination that the verdicts, even if inconsistent, did not undermine the sufficiency of the evidence was reasonable under *Jackson*.  The Supreme Court has rejected the proposition that due process always requires that convictions be consistent. *Standefer v. United States*, 447 U.S. 10, 25 (1980).  The Court has made clear that inconsistent verdicts may stand when one of the verdicts is a conviction and the other an acquittal. *Ferrizz v. Giurbino*, 432 F.3d 990, 992 (9th Cir. 2005) (citing *United States v. Powell*, 469 U.S. 57, 65 (1984); *Dunn v. United States*, 284 U.S. 390, 393 (1932)).  The rationale for this rule is that the acquittal may be an exercise of leniency by the jury not necessarily grounded in its view of the evidence.  *Id.* at 993.

Moreover, as the Court of Appeal here explained, the verdicts were not necessarily inconsistent because "[t]he jury could have reasonably concluded that one of these . . . acts did not involve the requisite force and, on that basis, acquitted on one of the counts." *Martinez*, 2009 Cal. App. Unpub. LEXIS 7316 at *15.  Because the Court of Appeal's decision was not an objectively unreasonable application of clearly established federal law, petitioner's claim fails.

**CONCLUSION**

For the foregoing reasons, the petition is denied. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: January 30, 2012

SUSAN ILLSTON
United States District Judge